[No. 22855. Department Two. June 22, 1931.]

R. G. Shrader, *Appellant,* v. J. S. Slocum *et al.,
Respondents.*[1]

*McAulay & Freece* and *Roberts, Skeel & Holman,*
for appellant.

*LaBerge, Cheney & Hutcheson* and *Ralph B. Wil-
liamson,* for respondent.

Fullerton, J.—In the early part of the year 1928,
the appellant, Shrader, was the owner of an 80-acre
tract of land situated in Benton county, on which was
an apple orchard. The respondent Slocum owned

[1]Reported in 300 Pac. 524.

real and other property situated in the city of Seattle. In March of the year named, the parties made an exchange of properties, in which the appellant conveyed to the respondents the land in Benton county, and the respondents conveyed to the appellant certain real property situated in the city of Seattle, valued at $9,414.77, transferred to the appellant a note for $6,000, and gave to the appellant a mortgage on the land conveyed to them in the sum of $4,585.23.

The tract conveyed to the respondents was within an irrigation district established by the Federal government, and was subject to a proportionate share of the cost of constructing the irrigation works. There were also certain delinquent water assessments then due on the property, and the state and county taxes had not been paid for the preceding two years. All of these items were assumed and agreed to be paid by the respondents as a part of the purchase price of the property. The record is not clear as to the amount these items increased the purchase price of the property over and above that paid and agreed to be paid the respondents, but seemingly they approximate a sum in excess of $4,000.

The present action was instituted by the appellant to foreclose the mortgage given by the respondent to the appellant covering the Benton county land. In answer to the complaint of the appellant, the respondents set up fraud and overreaching on the part of the appellant, by reason of which they were induced to enter into the contract, and by which they suffered an injury. The fraud and overreaching consisted principally of misrepresentations as to the condition of the orchard on the land, and the character, quality, and productiveness of the land, it being alleged that the representations made concerning the property were false in each of these particulars.

There was a trial before the court sitting without a jury. The court found that the respondents had been defrauded by the misrepresentations of the appellant to the extent of ten thousand dollars, and entered a decree in accordance with this conclusion.

On the merits of the controversy, the evidence, as we read it, supports the conclusions of the trial court. While the property transferred and conveyed by the respondents to the appellant represented actual values, the property they received in return was grossly overvalued. To be of the value which the respondents agreed to pay for it, it would have to have been, for its greater part, first class orchard land. That it was not such, the evidence very conclusively shows. The land as a whole is underlaid with a ledge of scab rock and hardpan, and on some parts of it the ledge is so near the surface as to render the land of no value for any purpose. On other parts of it the soil is so shallow as not to permit the growth of agricultural crops other than light hay crops; and crops of this sort only by excessive irrigation. There is, perhaps, thirty acres of the tract on which orchard trees will grow; but here, again, the evidence is that the soil above the rocky ledge is so shallow as not to permit the trees to make a normal growth.

The general character of the land seems to be well illustrated by a classification made by the officers of Benton county. That county caused all of the lands within its boundaries capable of being irrigated to be classified into six classes. Of the lands in this tract, the officers placed twenty-eight acres in class three; twenty-five acres in class four; fifteen acres in class five; and twelve acres in class six; finding no first or second class lands on the tract.

The evidence as to value of the property overwhelmingly supports the conclusion of the trial court. None

of the appellant's witnesses, with possibly one exception, testified that the land was of the value the respondents agreed to pay for it, and a number of the witnesses testifying for the respondents placed a valuation upon it much lower than the court found it to be. Unless, therefore, there are reasons apart from the merits of the controversy which require a reversal of the judgment entered by the trial court, its judgment must stand affirmed.

The first of the reasons which are thought to estop the respondents from now asserting the fraud is the fact that they made no complaint until after the appellant had commenced his action to foreclose his mortgage for the unpaid purchase price. But this conduct on their part will not estop them from asserting the fraud unless it might be that their silence in some way operated to the injury of the appellant, and of this there is nothing in the record. It was, of course, a fact permitted to be shown to affect their credibility as witnesses, but we cannot think that it has any controlling weight even in this respect.

[3] The second is that the representations made were not of the character on which the respondents had a right to rely; that the representations, in so far as they were pertinent, related to the quality and value of the land, the truth of which could be determined by an inspection of the property, and that the respondents did make such an inspection prior to entering into the contract of purchase, and did not rely on the representations of the appellant. But the assumption here made hardly meets the situation presented. It is true that one of the respondents did inspect the property before the contract of purchase was entered into, but the inspection was made in the early part of the year, at a time when the orchard trees were dormant and the ground frozen, a time when the condition of the orchard

and the shallowness of the soil could not be ascertained without an extensive and prolonged investigation, which the respondent did not then make, and was not expected to make. Under these circumstances, it would be too much to say that the respondents had no right to rely on the representations as to the condition of the property.

The appellant stresses the point that he invited the respondents to make inquiries of persons living within the vicinity of the land, and of others who had knowledge of the crop yield, if he was not satisfied as to the condition of the property from his inspection of it. Had he, himself, made no representations concerning the condition of the property, these matters might have been pertinent, even though he knew that the examination given the property by the respondents gave them no adequate idea of its condition or value. But he did not leave the respondents to their own resources, and, whether it was so intended or not, these proffers rather tended to allay suspicion than to create it.

In our opinion, the trial court reached a correct conclusion on both fact and law, and its judgment will stand affirmed.

TOLMAN, C. J., BEALS, PARKER, and MILLARD, JJ., concur.