[No. 24947.   Department One.   March 29, 1934.]

C. GROSGEBAUER *et al., Appellants,* v. JACOB SCHNEIDER *et al., Respondents.*[1]

[1]Reported in 31 P. (2d) 90.

44

*LaBerge, Cheney & Hutcheson,* for appellants.

*M. C. Delle, Grady & Velikanje,* and *Stanley P. Velikanje,* for respondents.

STEINERT, J.—Plaintiffs brought this action to recover the sum of three hundred dollars, the accrued amount of unpaid installments due and owing upon an executory contract for the sale of real estate by plaintiffs to defendants, the total price of which, according to the contract, was twenty thousand dollars. In their cross-complaint, defendants sought to recover damages in the sum of eleven thousand three hundred dollars for fraudulent misrepresentations inducing the sale.

Trial was had before the court without a jury. Findings were made to the effect that plaintiffs, through false representations, had defrauded defendants to their damage in the sum of ten thousand dollars; further, that, on January 4, 1933, there was owing by defendants on the contract, according to its

terms, the sum of $12,362.77, including the three hundred dollars which plaintiffs had sued for. The court concluded that the sum of ten thousand dollars should be applied as an offset and abatement against the $12,362.77, leaving a balance of $2,362.77 to be paid in installments as provided in the contract. Judgment was entered accordingly with costs to defendants.

Plaintiffs having appealed, they will hereinafter be referred to as appellants, and defendants as respondents.

At the time of the transaction with which we are presently concerned, the property here involved was owned by appellants. It consisted of two pieces of improved real estate located opposite each other on a paved highway in the town of Buena, which is about sixteen miles southeast of Yakima. The property on the north side of the road comprised about an acre, upon which was a garage, a Shell service station and a grocery store with two apartments above it, all of which buildings and improvements faced on the highway, and, in the rear, a seven-room house, a four-room house and four cabins.

The property on the south side of the road comprised about four acres, used and operated as a tourist park, and upon which there were seventeen cabins, an office and a washhouse. The tourist park had been purchased in an unimproved state in November, 1928, by appellants and one M. A. Sheridan, under a real estate contract, for the sum of twelve hundred dollars, of which two hundred dollars had been paid in cash, and the balance of which was payable in annual installments of two hundred and fifty dollars, beginning November 27, 1929. During the year 1929, Mr. Grosgebauer and Mr. Sheridan had erected the cabins and other buildings on the tourist park property.

The story of this case has its beginning in the month of April, 1930. Respondent Jacob Schneider, a man sixty years of age, was the pastor of the Lutheran church at Buena, where he had been located for about two years. He had been a minister for about thirty-five years, and had arrived at the age and point of retirement from his chosen profession. He was desirous of securing some business or employment that would produce a livelihood for himself and family and at the same time afford him the opportunity of being out of doors. His inclination was to secure a gasoline service station or tourist park, and with that idea in mind, he began to make inquiry and investigation.

He had purchased gasoline at appellants' station several times, and in that way had established a slight acquaintance with Mr. Grosgebauer, a man then about fifty-seven years of age. On one occasion, shortly prior to May 1, 1930, Mr. Schneider chanced to ask Mr. Grosgebauer whether the latter could suggest a business opportunity of the kind desired by the former, and was informed that the Grosgebauer property was for sale. Negotiations then began, and continued over a week or ten days.

In the first conversation between the two men, Mr. Grosgebauer stated that he did not care to sell the tourist park property. Mr. Schneider indicated that he would not be interested unless that property was included. A few days later, Mr. Schneider called again, and Mr. Grosgebauer then offered to sell the entire property, including his undivided one-half interest in the tourist park property, for twenty thousand dollars. The Schneiders at that time owned a house and several lots in Valleyford, near Spokane, which they desired to trade in on the deal. After a trip of inspection, Mr. Grosgebauer agreed to take over

the Valleyford property on a valuation of twenty-five hundred dollars.

During the negotiations, Mr. Schneider inspected the Grosgebauer property several times, and on one or two of these occasions was accompanied by his wife. The parties finally agreed to a sale and purchase of the Grosgebauer property at a price of twenty thousand dollars, of which thirty-five hundred dollars was to be paid down in cash, twenty-five hundred dollars by the conveyance of the Valleyford property, and the balance of fourteen thousand dollars to be paid at the rate of one hundred fifty dollars per month, including interest at six per cent per annum.

The matter was then referred to an attorney for the preparation of a contract. To meet various suggestions and objections made by the parties, the contract was redrawn a number of times by the attorney, who, upon each occasion, sent each of the parties a corrected copy. Finally, the contract was completed, executed and delivered. The contract bears date May 1, 1930, though concededly the transaction was not consummated until May 16, 1930. At that time, there was still owing on the contract under which Grosgebauer and Sheridan were purchasing the tourist park, a balance of three hundred seventy-five dollars, which respondents assumed and agreed to pay.

After the deal had been concluded, respondents went into, and ever since have been in, possession of the property purchased by them. Some time in December, 1931, appellants notified respondents, in writing, that the latter were in default in the performance of certain terms of the contract, particularly with reference to installment payments, insurance and taxes, and that forfeiture would be declared unless the contract was put in good standing on or before December 29th. In response to this notice, respondents' attorney, on

December 11, 1931, wrote to appellants that all payments referred to in the notice had been made prior to receipt of appellants' demand. In June, 1932, respondents were in default of the payment for that month and also in arrears to the extent of twenty-five dollars per month for the six preceding months. After demand and refusal of payment, this action was begun by appellants, against which respondents cross-complained upon the ground of fraudulent misrepresentations in the sale of the property.

The fraud alleged in respondents' pleading, and concerning which they testified, was as follows: That, during and prior to the conclusion of the negotiations, appellants had stated and represented to respondents that the store building had cost twenty-five hundred dollars; that the dwelling house and residence had cost thirty-five hundred dollars; that the service station had cost eighteen hundred dollars; that the tourist park property had cost six thousand dollars, and that during the year 1929 it had yielded an income sufficient to pay for itself, which the books would show if it were not for the fact that they had been burned; that the pump on the park property had cost two hundred fifty dollars; that the apartments over the store building would readily rent, and that there was an applicant for one of them at a stipulated rental of twenty-five dollars per month; that all of the buildings on both properties were in a good state of repair, and that the value of the entire property was twenty thousand dollars and had been yielding, and would yield, a very substantial income.

The appellants admitted, and testified, that they had told respondents that the park property had made enough in 1929 to pay for itself, but they denied having told appellants that it had cost six thousand dollars. They further testified that the total value which they

had placed on their property was twenty thousand dollars, and gave in detail their reasons and basis therefor. They emphatically denied, however, having made any misrepresentation whatever.

The evidence concerning the alleged misrepresentations was based almost entirely upon the testimony of the parties concerned, and presented a sheer conflict. The trial judge in his memorandum opinion stated that he had carefully studied the respondents while giving their testimony, and was impelled to conclude that they had told the truth, and that Mr. Grosgebauer's testimony, in one respect at least, had been discredited. Testimony was also offered by third persons on behalf of respondents to impeach Mr. Grosgebauer's veracity.

Were we deciding this case upon the evidence as it appears in cold print, we have grave doubt that we would arrive at the same conclusion that the trial court did upon the question of fact regarding fraud. In many respects, the testimony of appellants accords with what we think was actually said and done by the parties during the negotiations. It seems more than passing strange that respondents should have been particularly concerned with what it had cost to construct some of the buildings on the premises, without reference to what the investment as a whole had cost. It is also strange that they thought that the park property had cost six thousand dollars, when they knew from the very contract which they assumed that the land had cost only twelve hundred dollars, and were certainly in a position to estimate, or learn, what it had cost to erect the cabins thereon. In any event, they got the very property that they were seeking to buy, irrespective of what it had cost.

It is also strange that the respondents, realizing that they had been defrauded to the extent of ten thousand

dollars, as the court found, did not rescind the sale within a reasonable time, but rather continued making payments thereon, in whole or in part, until shortly before this action was begun, and then asserted their damages by way of cross-complaint. It is also worthy of note that property values in the particular neighborhood have materially declined since 1930.

So far as the corroboration of respondents' testimony as to misrepresentation was concerned, it seems to us that the particular evidence was about as favorable to appellants as it was to respondents. The other corroborating testimony went only to a single matter, and was but circumstantial at best; moreover, it came from the lips of a competitor. Further, we are not greatly impressed by the testimony which sought to impeach Mr. Grosgebauer's veracity. It came from persons who admittedly had had business differences with him, in large part with respect to moneys owing by them to him. On the other hand, appellants, in rebuttal, produced a number of witnesses of apparent good standing in the neighborhood who had known Mr. Grosgebauer many years, had had business dealings with him, knew his reputation in the community, and testified that that reputation was good. On that issue, it seems to us that the appellants had the advantage, so far as we can interpret the record.

However, the trial judge had the benefit of seeing the witnesses and observing their demeanor. We must accord to him the privilege, which he rightly has, of weighing the testimony in the light of its credibility as it appears to him, and we must accept, as we do, his estimate of its truthfulness. There was evidence to support the findings of the court upon the question of fraud with respect to misrepresentations as to the cost of the buildings, the amount of income earned, prospective tenants and the rentals. If appellants' evi-

dence upon these matters be depreciated by its lack of credibility, then it must be said that the preponderance of the evidence upon that issue lay with respondents.

In this connection, appellants make a point of the fact that the alleged misrepresentations were made, as respondents testified, after the latter had paid the appellants an initial sum of fifty dollars "to bind the bargain." Appellants' argument is that the purchase was not made in reliance upon the representations, but had already been agreed to when the initial payment was made. But at that time no contract had been entered into, the minds of the parties had not met, and neither of them was bound to do anything. The payment was made simply as evidence of good faith and as an introduction to the negotiations which followed. If the evidence of the respondents is to be taken as true, it was the misrepresentations of appellants that induced the respondents to enter into the contract that was subsequently and ultimately made. Representations made while the transaction remains executory and for the purpose of inducing its completion, are admissible to show fraud. 27 C. J. p. 59, § 193.

Appellants next contend that respondents' cause of action set forth in their cross-complaint is barred by laches and estoppel. The cross-complaint was not an action for rescission, but one at law for damages. When one seeks to rescind for fraud, he must act promptly upon its discovery, but this is not the rule where the defrauded party elects to affirm the contract and sue for damages, unless his silence has in some way operated to the injury of the other party. *Shrader v. Slocum,* 163 Wash. 178, 300 Pac. 524.

The rule permitting performance of acts in affirmance of an executed contract after discovery of fraud, without waiving an action for deceit, also applies, under certain circumstances, to contracts which

have been only partly performed at the time of the discovery of the fraud. *Bean v. Bickley,* 187 Iowa 689, 174 N. W. 675. Among the illustrations of this rule are two which apply here. One is where the party defrauded will lose a profit which he would have enjoyed had he been fairly dealt with. Another is where the rescinding party can not be restored to his original position. In this case, if respondents' evidence be accepted as true, as it was by the trial court, respondents have lost the benefit of their bargain as it was represented to them, and also the benefits of the efforts that they have expended upon the property. It also appears from the evidence that the house upon the lots which respondents conveyed to appellants has since burned down. Under these circumstances, performance by respondents did not constitute a waiver or estoppel. There are other circumstances in the case which argue the same result.

■ Appellants next contend that misrepresentations as to cost are not actionable. In a general way, this is true. But where such statements are coupled with other false statements relative to property sold and purchased, and the statements as a whole have the effect of inducing the purchase of the property, the purchaser is entitled to maintain an action for fraud. *Beck v. Goar,* 180 Ind. 81, 100 N. E. 1; *Jarratt v. Langston,* 99 Ark. 438, 138 S. W. 1003; *Hull v. Doheny,* 161 Wis. 27, 152 N. W. 417; *Upham v. Mickleson,* 157 N. W. (Iowa) 264; *Miller v. Du Val,* 191 Mich. 386, 158 N. W. 140.

In the present case, the court found that appellants had misrepresented the property as to cost, condition of repair, income and rentals, and that respondents had been induced thereby to enter into the contract.

■ Appellants finally contend that the court allowed the respondents excessive damages, and with

this contention we fully agree. The court found that appellants had represented to respondents, and had led the respondents to believe, that the entire property was of the value of twenty thousand dollars and that, because of such misrepresentations, the respondents had been damaged in the sum of ten thousand dollars. From this, it is apparent that the value which the court set on the property was only ten thousand dollars. In fact, in its memorandum opinion, the trial court stated that, under the evidence, its value did not exceed $9,292.

Respondents' major complaint was that appellants had misrepresented the cost of construction of the buildings on the north tract and had represented that the purchase price of the tourist park on the south tract was six thousand dollars, and that the latter property had yielded sufficient income to pay for itself in one year. The finding of values arrived at by the court was based on evidence tending to show what the property had actually cost and what the reasonable cost of constructing the various buildings was. Had this been the exclusive theory on which the case was tried, the court might have been warranted in adopting it. But respondents themselves did not wholly rely upon that theory.

After the case had progressed to the point where the evidence as to value was in conflict, respondents themselves produced evidence, which was not contradicted by appellants, as to what the tourist park property had actually produced during the year preceding the sale. Based upon that showing, respondents' own expert witness then testified that on that basis the entire property was worth from fourteen to fifteen thousand dollars. That valuation was based upon an hypothesis which included all the elements of misrepresentation relied on by respondents. This, in

our opinion, should have been the basis of the court's valuation.

While the purchase price of property and the cost of construction may be elements entering into the determination of value, they do not wholly control it. Many other elements often enter into consideration in placing values on property of the kind here involved; such elements include location, adaptability, physical conditions, income derived therefrom, and the reasonable expectancy of future income. Where the property purchased is of the kind which requires personal service and attention, that also affects income expectancy. The measure of damage in fraud cases in this state is the difference between the market value of the property as it would have been had the property been as represented and the market value of the property as it actually was at the time of the sale or trade. *Hunt v. Allison*, 77 Wash. 58, 137 Pac. 322; *Edwards v. Powell*, 121 Wash. 598, 210 Pac. 7, 212 Pac. 163.

Applying this rule, under respondents' own evidence, the measure of damages to them would be the difference between twenty thousand dollars, the market value of the property as it was represented to them at the time of the sale and as found by the court, and fifteen thousand dollars, the market value which respondents' own witness placed thereon under the conditions as they actually existed. The difference amounts to five thousand dollars. Hence, the amount deducted from the contract should have been five thousand dollars less than what was actually deducted by the court; or, conversely, the value placed upon the property by the court should have been five thousand dollars greater than what the court found.

We take occasion to say that we agree with the theory of the trial court that, under the facts in this

case and to the extent of the proper amount of reduction, there was a failure of consideration. *Wyer v. Henderson,* 159 Wash. 497, 294 Pac. 228. One induced by fraud to enter into a contract for the purchase of real estate may set up such fraud in partial defense and recoup his damages in an action brought by the other party, and may have the amount of such damages applied against the contract. *Paolini v. Sulprizio,* 201 Cal. 683, 258 Pac. 380.

The cause is remanded, with direction to the trial court to modify its judgment in conformity with the views herein expressed.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.

