Samuel THOMPSON, Appellant
(Plaintiff Below),

v.

William M. BEST, Jr., and Judith D.
Best, Husband & Wife, Appellees
(Defendants Below).

No. 4–284A48.

Court of Appeals of Indiana,
Fourth District.

May 20, 1985.

Rehearing Denied June 27, 1985.

Dock McDowell, Jr., Gary, for appellant.

Robert M. Corbin, Walker, Fleming, Corbin & Greenberg, Merrillville, for appellees.

MILLER, Presiding Judge.

Samuel Thompson believes he should be compensated for having purchased a house which, without his knowledge, has severe flooding problems. The sellers, William Best and Judith Best, deny any wrongdoing on their part and insist they not be held liable. After hearing Thompson's case-in-chief against the Bests on allegations of fraud, the trial court determined Thompson had not made a case sufficient to go to the jury and granted the Bests' motion for judgment on the evidence. The record reveals Thompson presented evidence on all the essential elements of actual fraud, and the trial court erred in determining to the contrary. Reversed and remanded for a new trial.

## ISSUES

■ Thompson has offered reversible error in the following proposition:

Whether the trial court erred in granting the Bests' motion for judgment on the evidence after Thompson presented his evidence of fraud.[1]

## FACTS

In late 1980, Thompson was seeking a home bigger than the one he already occu-

---

1. Thompson presented two additional issues concerning trial procedure:

 Whether the trial court erred in refusing to admit a film into evidence for the purpose of proving the condition of Thompson's home;

 Whether the trial court erred in sustaining the Bests' objection to a hypothetical question directed to one of Thompson's witnesses.

 Because we reverse on other grounds going to the substance of this case, we need not address these two errors here, particularly when we cannot be assured the "problems" will present themselves on retrial. However, we do not believe the film was, in all probability, anything more than merely cumulative evidence of oral testimony already submitted regarding the damage to Thompson's house; there is no error in refusing admission of such evidence. *See, e.g., State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091. (A determination by the court that the film was cumulative evidence in this case directly contradicts any intimation that it was irrelevant and therefore lacked a proper foundation for admission. It cannot be both. We hope that if this issue arises again, there will be some consistency in arguments thereon.) As for Thompson's procedural question regarding the Bests' objection to his inquiry into a hypothetical situation presented to his expert, (Record, p. 51), we believe the record shows that the question was actually answered in another fashion after the objection was sustained. (Record, p. 52.) We see no harm having been done at the first trial and, thus, cannot foresee how it would be any problem in a second one if the substantive matter requested by the hypothetical question can be garnered in another but unobjectionable manner.

pied and in his quest saw the Bests' home, in Gary, was for sale. The Bests allowed him to briefly tour their house although they expressed some reservations about the propriety of this because they felt perhaps their agent should be present. Regardless, Thompson got only a cursory view of the house before he returned for a second visit with the Bests' agent a couple of days later. This second visit took about fifteen minutes and shortly thereafter, on December 8, Thompson made an offer on the house by completing, but not signing, an agreement to purchase.

Within a month of Thompson's second visit, evidently in January, he toured the Bests' home a third time at which point Thompson and Best entered into a discussion about the sump pump in the basement and the footing tiles around the house. Thompson testified that during this conversation he specifically asked Best if he had a water problem with the house and Best said he had none. Thompson was soon to believe differently.

At some date which is not clear (because the evidence was not transmitted to this court), Thompson and the Bests settled on a price for the house, and Thompson signed the purchase agreement. The deal was closed on April 14, 1981, and Thompson took possession in May. As Thompson moved in, he discovered a second pump well in a crawl space in the basement, which well had previously been covered by the Bests' belongings stored in the crawl space and which Thompson had therefore been unable to see upon prior inspection. Thompson questioned Best about this well in the center of the devastated floor. Best explained he had *had* a water problem before, some snafu with water run-off and gutters, and that this second pump well had been dredged to cure the problem. He again denied there was any water problem in the house.

Thompson left it at that until, within two weeks of moving in, he discovered the carpeting in the basement was wet. He then noticed that the sump pump was constantly running, and that if for any reason, it did

not, water would rise up to knee level in the basement within minutes. Upon his independent investigation, Thompson discovered that some of his new neighbors had water problems in their basements too so he began to have experts come out to examine the problem.

Lawrence DuBose, a civil engineer specializing in ground water studies, observed water percolating to the surface of Thompson's lawn and ½″ of water in the basement. He testified the basement had been built below the ground water table thereby creating a circumstance for water to constantly enter the drain tiles, forcing the sump pump to continually work because its well would otherwise fill within five minutes and further forcing water to come in the basement walls. DuBose stated that years with rainfall as heavy as the spring of 1981, when Thompson discovered his problem, would also have created problems for the previous owner. In this case, just such a year was 1972, when the Bests put their house up for sale unsuccessfully the first time. (The second time it was unsuccessfully put on the market was in 1978, another year of above-average rainfall.) DuBose also speculated that even one heavy rainfall would probably have raised the water table sufficiently to cause flooding. He thus concluded the previous owner would have experienced water problems too.

Howard Dillabaugh, a structural mover (raises and moves houses), inspected Thompson's home when there were seven inches of water in the basement. He opined that the water movement in and out of Thompson's basement was driving sand from under the foundation and that the house could be settling even deeper.

R.J. McClelland, a drainage inspector from the Lake County Surveyor's office, found ½–1″ of water in Thompson's basement (even though it had not rained for some time), water marks along the walls, and water seeping in through a crack in the floor. He explained the problem as being a cycle of water being drained from the lawn then pumped out of the basement back

onto the lawn, where the cycle repeated itself, and that it had existed for some time.

One of Thompson's most damaging witnesses was William Hayden. Hayden is a waterproofing contractor who said Thompson's was one of the worst basements he had ever seen in his thirty years' of business. In his opinion, based on his experience and the fact he himself lived only five blocks away, the condition began shortly after the house was built. He testified the subdivision where Thompson lived had been a swamp before it had been developed and that many homes in that area have water problems. Upon cross-examination by defense counsel, Hayden declared "it's not possible" that there was no water problem for the Bests before 1981, when Thompson's saga began.

Charles Walker of the U.S. Soil Conservation Service also inspected Thompson's property. After making soil bores, he found the soil there showed the existence of a high water table which fluctuated during the year and left evidence therein by depositing calcium. He testified that particular soil is an inherent characteristic of such rise and fall and mottling by the calcium had always existed, i.e. was not just a recent phenomenon.

There were miscellaneous other witnesses who testified to other singular facts, such as Michael Varso, a neighbor who saw the Bests when they excavated to put in a new tile around their home but refused to talk to him about it; neighbor Catherine Haggerstrom who said she has experienced water problems in her own home because of the water table level for 8–10 years; and finally, Quvella McGowan, a general construction contractor of the opinion that the leakage problems had existed from the time the house had been built because he had been unable to detect any structural changes made since then.

As a result of this lack of proper drainage, Thompson has experienced periodic flooding in his basement of major proportions, except in winter when the water table is lower (and which was, notably, the season when he inspected the house for purchase). He declares his basement is unlivable and has cramped his five children, who have no place to play. Mrs. Thompson has been ill ever since she moved in the house and has been hospitalized with pneumonia, evidently from her constant exposure to the hazards in the basement. The remedies available are of all types of expensive and far-reaching effects (such as a neighborhood storm drain) but the general consensus of opinion among almost all the experts was that the house should be raised—a solution with a $40,000 price tag for a house costing $57,000.

At the close of Thompson's case, the Bests moved for judgment on the evidence, which the trial court granted, commenting in part as follows:

"Now, Mr. Thompson is obligated as a buyer, he's owned a former home, he comes to buy a home, he's obligated to take notice of the geographic level, the fact that there's no storm sewers, there's low ground, the property is on level property and maybe no natural runoff.... The way the evidence shows there's a high water table there. There's no evidence the Defendants concealed the fact that there may be a high water table. There's no question Plaintiff in this lawsuit has had a lot of problems since then, maybe the sump not working or the tile around the bottom is clogged up and that's not doing a sufficient job. For whatever reason, she's had a problem and he's had water, but he made the offer right after he looked at the place. Here's where we have a problem: You know there's a sump pump there and it's there for a purpose. I suppose it's there to take out water if water happens to come in the basement in wet times, or all the time or whatever. It's there. When you say there's no water problem, the way the Court assumes is meant by that by Mr. Best is hey, as long as the sump pump is working and the perimeter tile is working, our basement has been dry. I think the gist of the whole case is there's no evidence while the Defendants owned

this home that they had water in the basement, that there was any terrific problem or any problem. I don't have one witness to say that. I don't have any Plaintiff's expert to say that's the case...."

Record, pp. 237–38. The jury was dismissed.

## DECISION

■■■■ The procedural posture of this case—an appeal from a judgment on the evidence—requires that we at least briefly recall our standard of reviewing such a judgment. A judgment on the evidence is *granted,* in cases such as the one before us, "[w]here all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence...." Ind. Rules of Procedure, Trial Rule 50(A). As we analyze the trial court's decision here we are mindful that we may consider only the evidence, and the reasonable inferences therefrom, most favorable to Thompson because he was the nonmovant here. *See Jones v. Gleim* (1984), Ind., 468 N.E.2d 205; hence, the facts we recited above. The Bests are entitled to succeed on appeal here only if these facts fail to establish even a reasonable inference of any essential element of Thompson's case. *See Terre Haute First National Bank v. Stewart* (1983), Ind.App., 455 N.E.2d 362. If our scrutiny reveals that the evidence is without conflict and favors Bests' defense, *see Jones v. Gleim, supra,* or if a verdict based thereon in Thompson's favor must needs be based only upon surmise, speculation, or conjecture, as based upon an unreasonable inference, we must uphold the trial court's decision. *See Senco Products, Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561. It is clear then, from our standard of review and its references to inferential reasoning that the consideration of circumstantial evidence is not only acceptable but may, of necessity, be the solitary foundation for a nonmovant's (in this instance,

Thompson's) prima facie case. *Id.* (It is also the law that a claim for fraud may be established by circumstantial evidence. *E.g., Gonderman v. State Exchange Bank, Roann* (1975), 166 Ind.App. 181, 334 N.E.2d 724.) Therefore, we reach our conclusion, that the court erred here, by relying heavily on both the direct and the circumstantial evidence and the reasonable inferences therefrom in order to determine if Thompson constructed a prima facie case of fraud against the Bests.

■■■■ The well-established elements of actual fraud[2] consist of "a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying upon it." *First National Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345, 1348; *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756. We think it self-evident that Thompson established each of these elements in his well-constructed case-in-chief.

The first element we address is that of whether the Bests made a false representation of a material past or existing fact. Thompson's evidence revealed that Mr. Best declared he had no water problems— this statement is obviously a representation of the past and/or existing condition of the basement. That it was a material representation is manifest by the fact that the basement, in its current state is unhealthy, unsafe, and unusable. Such circumstance, we can easily infer, affects the value of the bargain Thompson struck with the Bests for the sale of the house, and thus we can conclude the representation was material. *See, e.g., Sriver v. Maley* (1958), 128 Ind. App. 619, 151 N.E.2d 518 (representation of amount of corporate debt material to a stock transaction); *Judy v. Jester* (1912), 53 Ind.App. 74, 100 N.E. 15 (declarations as to quality of soil material to sale of farm). There is also evidence that the representa-

---

**2.** The Bests contend that Thompson is foreclosed from making his appellate arguments based on constructive fraud because he failed to address this issue in his motion to correct error.

Because we determine that we can reverse the judgment upon Thompson's prima facie case for actual fraud, we need not address this contention.

tion was false—there is indeed a water problem with the house's basement. Whether the statement was false when made was affirmatively established when Thompson's witnesses testified the problem had existed for some time. Direct testimony of eyewitnesses to flooding while the Bests resided in the home is not necessary. Rather, the representation of the absence of water problems, made by Mr. Best to Thompson, does not jibe with the testimony of what would appear to be a recurring severe drainage difficulty. Thompson made a prima facie showing of this first element. *Miller v. Bare* (N.D.Pa.1978), 457 F.Supp. 1359 (representations there were no major problems yet home's recreation room had flooded); *Sippy v. Cristich* (1980), 4 Kan.App.2d 511, 609 P.2d 204 (material misrepresentations that leaking roof had been repaired); *Hauck v. Samus* (1982), 212 Neb. 25, 321 N.W.2d 68 (representations with regard to basement flooding); *Chastain v. Billings* (1978), Tenn. App., 570 S.W.2d 866 (representations of absence of water problems); *Ware v. Scott* (1979), 220 Va. 317, 257 S.E.2d 855 (misrepresenting flooding problems); *generally* Annot., 90 A.L.R.3d 568 (1979).

 We believe it also might be pertinent to point out that the Bests need not even have had to make an actual representation to Thompson.[3] As soon as Mr. Best introduced Thompson to the fact of the sump pump and the drainage tiles around the house, it was incumbent upon the Bests to *fully* declare any and all problems associated with their function. We have no doubt that we must lay a certain amount of responsibility upon Thompson to be aware that the presence of the pump and the tile

indicated a water condition obviously requiring their presence. However, we cannot require Thompson to assume the burden of being knowledgeable regarding all such problems, particularly when the problem is not apparent. (The basement floods less, if at all, in the winter months, and Thompson made his inspections in December and January.) Thus, once Best undertook "to disclose facts within his knowledge, he [had to] disclose the whole truth without concealing material facts...." *Indiana Bank & Trust Co. v. Perry* (1984), Ind.App., 467 N.E.2d 428, 431; *Baker v. Meenach* (1949), 119 Ind.App. 154, 84 N.E.2d 719. One cannot be allowed, under the law, to *partially* disclose the facts as he knows them to be, yet create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs. *Peerless Mills, Inc. v. American Telephone & Telegraph Co.* (2d Cir.1975) 527 F.2d 445; *Strand v. Librascope, Inc.* (E.D.Mich.1961), 197 F.Supp. 743; *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill.App.3d 925, 316 N.E.2d 51; *Sullivan v. Ulrich* (1949), 326 Mich. 218, 40 N.W.2d 126 (purchase of termite-infested home). To fail to disclose all such matters clearly works a fraud upon the listener and is a breach of any trust bestowed upon the speaker that he will deal fairly with such listener. *Consolidated Oil & Gas, Inc. v. Ryan* (W.D.Ark.1966), 250 F.Supp. 600. Therefore, once Mr. Best took it upon himself to explain the house's drainage situation, *vis à vis* describing the tasks of the sump pump and the tiles, he was required to disclose the *entire* situation, not just those portions that would not spoil a sale of the house.[4]

---

**3.** As we discuss later with regard to the element of reliance, Thompson's account is rather fuzzy with regard to certain dates: when he visited the Bests, when certain representations were made, and when certain portions of the deal were struck. In order to obviate any question with regard to the issue of Thompson's reliance in relation to when he relied on what statements, we have assisted the trial court in overcoming any chronological problems by giving him a spectrum of fraudulent conduct to which the jury may be exposed during trial.

**4.** For instance, in *Indiana Bank & Trust Co. v. Perry* (1984), Ind.App., 467 N.E.2d 428, evidence showed that the Bank misrepresented the cause of wet carpeting and a detached structural pillar in a home, which defects (it assured the buyers) would be replaced. Further, it was later discovered that portions of the home's interior had been repainted and covered watermarks. The purchasers sued for fraud in the concealment of the house's serious structural defects. This court commented on the sufficiency of this evidence to take the question of fraud to the jury:

Representation or concealment of a false fact as discussed above is not sufficient to prove fraud, however, unless the Bests knew or had reason to know of its falsity, the second element of actual fraud. Thompson more than compensated for his lack of direct evidence on this issue by his comprehensive harvest of circumstantial evidence. He brought forth several experts who testified this flooding condition has existed for quite a while, a neighbor who has a flooding basement herself, and another neighbor who saw the Bests attempt to cure a drainage problem themselves. Even though the Bests may enter court and deny all this evidence, the fact remains that the testimony actually presented in Thompson's prima facie case leads to the *reasonable* inference (*Senco Products Inc. v. Riley*, (1982), Ind.App., 434 N.E.2d 561) that the Bests knew all along of the problem. Thus, contrary to the court's comments, we find the Bests' knowledge was established.

The third element, Thompson's reliance, is a hotly contested issue here on appeal. The Bests argue that Thompson can show no reliance even if they uttered misrepresentations because they were made after Thompson had made his offer to purchase. They conclude, therefore, that Thompson would have entered the bargain regardless of the condition of the house. We do not find the evidence most favorable to Thompson leads to such conclusion and find the full (or partial) misrepresentations led him to enter into a bargain he otherwise would not have made.

In presenting his case, Thompson was not required to expressly state that he relied upon the Bests' representations, or that they so induced him to purchase the house. *See Fleetwood Corp. v. Mirich* (1980), Ind.App., 404 N.E.2d 38. Reliance, as with the other elements of fraud, may be raised by inference so that we can glean from the record facts which suggest such reliance. Thompson has shown this element in that the flooding is severe at times, the basement is unsafe and unhealthy, his five children have no room to play, and similar indices exist of the importance of the bargain into which he *thought* he had entered. We believe this is sufficient evidence to show that, but for his ignorance of the actual condition of the Bests' drainage difficulties, he would not have purchased this particular home.

■ What the Bests specifically attack is the timing of this reliance. We agree that Thompson has not (perhaps cannot) presented a crystalline chronology of his visits and of his first offer to purchase. However, it is very apparent that the evidence shows that Thompson inspected the property and the Bests made representations in December and January *while the deal was not closed* until April. It matters not that Thompson made an offer to purchase before he "relied" on the condition of the house. Any statements or silence of the Bests prior to consummation of the sale are sufficient to induce reliance. "Representations made while the transaction remains executory and for the purpose of inducing its completion are admissible to show fraud." *Grosgebauer v. Schneider* (1934), 177 Wash. 43, 31 P.2d 90, 93;[5] *Petersen v. Graham* (1941), 7 Wash.2d 464, 110 P.2d 149. We thus find that regardless of the timing of the preliminary maneu-

"In this case, there was evidence that the bank misrepresented the cause of the wet carpet and the detached pillar. Certain misrepresentations occurred in painting over the water marks. Under the above authorities, these acts amount to sufficient misrepresentation which imposed a duty on the Bank and its representative to disclose the whole truth." *Id.* at 432. Such situation is clearly analogous to the case here.

(In addition, we observe that, as in the case here, the purchase agreement in *Perry* contained an exculpatory "as is" clause with regard to the condition of the house. We still held that the purchasers could bring a tort action for fraud.)

5. In *Grosgebauer v. Schneider* (1934), 177 Wash. 43, 31 P.2d 90, we find a case almost on point. Buyers paid $50 to sellers to "bind the bargain" for the purchase of real property. Negotiations continued thereafter until the final contract was consummated. The Washington Supreme Court held the sellers liable for fraudulent misrepresentations as to the value of the land during that period of negotiations.

vers, the Bests made representations well before the sale was finalized. Thompson has made his prima facie case for his reliance.

As for the last element of fraud, Thompson's detriment, the record is more than adequate to show that Thompson has a problem that perhaps only a major investment will resolve. It will be up to a jury to decide what the actual measure of damages might be, but Thompson at least has borne the first burden of presenting evidence for a prima facie case.

We thus conclude that, in all respects, Thompson has presented a case for the jury. We therefore reverse the judgment on the evidence and remand for a new trial.

CONOVER and YOUNG, JJ., concur.