**INDIANA BANK AND TRUST COMPA-
NY OF MARTINSVILLE, INDIANA,**
**Defendant-Appellant,**

**v.**

**James L. PERRY and Marjorie Perry,**
**Plaintiff-Appellees.**

**No. 1–1083A337.**

Court of Appeals of Indiana,
First District.

Aug. 21, 1984.

Frank E. Spencer, Indianapolis, for defendant-appellant.

William T. Rosenbaum, Dillon & Cohen, Indianapolis, for plaintiff-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Indiana Bank and Trust Company of Martinsville, Indiana (Bank), appeals a verdict rendered by a Brown County Circuit Court jury in favor of plaintiff-appellees, James L. Perry and Marjorie Perry (Perrys), in their suit for damages arising out of the purchase of a residence.

We reverse.

## STATEMENT OF THE FACTS

In 1972 the Bank made a construction loan to a builder, Richard Venable, for the construction of a residence for re-sale in Foxcliff Estates near Martinsville. The loan was secured by a mortgage. Upon substantial completion, having been unable to sell the house Venable defaulted upon the loan. Upon suit and foreclosure of the mortgage the Bank purchased the property at the execution sale, and thereafter put it for sale. On April 16, 1976, the Bank's offer to purchase agreement was accepted by Perrys. That purchase agreement, and another agreement executed after closing, contained an exculpating clause which after reciting the foreclosure, stated in effect that Perrys purchased the property as is, relying entirely on their own inspection, and that the Bank would not be liable for any structural, mechanical or electrical problems associated with the property.

Evidence was presented at the trial that at the time of the sale the house, which was built on a hillside, had serious structural defects which were directly related to the type and depth of the soil. The construction of the house was such that the pillars in front of the house did not extend by footing to the bed rock, and the house had been settling forward and down, causing the walls to crack, pillars to fall, doors to slope, and windows to stick. The structure was seriously damaged by erosion and the movement of earth and trees, and was described as sliding down the hill to a river. During construction a foundation wall fell down three times. The back foundation wall was bowed, and water ran through it, ruining a carpet. There was evidence that if adequate repairs, costing $1,900.00, had been made after the Bank acquired title, the house could have been saved, but the Bank opted only to cause a swale and drain tile to be installed for $550.00 at the rear of the house to drain off the water, and as a result the house was further damaged and rendered worthless. There is also evidence that by virtue of conversations with realtors and contractors, and through their own visual inspection, bank officers knew of the defects prior to and at the time of the sale. During foreclosure the bank had petitioned the court for the appointment of a receiver to make repairs to prevent further damage to the house. However, it does not appear that the bank made any disclosure to Perrys about the house's defective condition. Nor did the Bank directly make any misrepresentations of any kind as to the quality of the house or its state of repair. The only evidence concerning misrepresentation occurred when Perrys, with their realtor, were inspecting the house prior to the purchase. They discovered the wet carpet and a pulled away pillar. Per-

rys' realtor asked the Bank's realtor the cause and was told that:

> "... it was his understanding that the drain, the outside drain, was pulled away, or something because of the heavy equipment that had graded the yard, and that had been, that had been replaced, and the carpet was going to be replaced in that room where it was wet."

There was further evidence that portions of the inside of the house had been repainted which covered up water marks.

On February 19, 1982, Perrys brought their action alleging in Paragraph I negligent construction by the bank as a finishing contractor and vendor; Paragraph II, implied warranty of habitation; and Paragraph III, fraud. This last count proceeded on the theory that the Bank, with knowledge of the faulty condition, (1) failed to repair; (2) failed to make disclosure of known defects; and (3) misrepresented the condition of the house. The Bank filed numerous motions attacking the validity of these theories, including motions for summary judgment, a motion to dismiss, a motion for judgment on the evidence at the close of Perrys' evidence, and a renewal thereof at the close of all the evidence. These motions were overruled. The oral motions, later reduced to writing, for judgment on the evidence asserted that Count I, negligence, was barred by the two-year statute of limitations; Count II was not valid because the Bank was not a builder-vendor under *Theis v. Heuer*, (1972) 264 Ind. 1, 280 N.E.2d 300; and the evidence was insufficient under Count III to prove actionable fraud. As relevant here, upon the renewal of the motion for judgment on the evidence at the close of all of the evidence the trial court ruled:

> "I'm going to deny his motion for summary judgment; uh, I'm going to reserve decision, and I want his written motion to dismiss one and two, uh, and I'm going to let this go to the jury on the question of fraud."

Throughout the remainder of the trial which concluded on June 23, 1983, in the record or in the instructions, there is no mention of, or statement regarding, the withdrawal of Counts I and II from the jury's consideration made by the court, the Bank or Perrys.

While the court in its preliminary instructions had instructed on the issues of negligence, warranty and fraud, its final instructions covered only the issue of fraud, and made no mention of the withdrawal of negligence or warranty. Two forms of verdict instructions were given: one directing the jury to find generally for the plaintiff without reference to any count or theory, and the other directing the jury generally to find for the defendant, which likewise made no reference to any count or theory. The jury's verdict for $50,000.00 was on the form for the plaintiff. The trial court stated in a special bill of exceptions dated January 12, 1984, that because his statement in his ruling on the motion for judgment on the evidence was ambiguous, he was certifying "that the ruling of this court sustaining the defendants' motion to dismiss Counts I and II of the Amended Complaint as to said defendant, was made that date, July 5, 1983". July 5 was the date he entered judgment on the verdict.

## ISSUES

The Bank presents five issues for review. The first four issues all concern the sufficiency of the evidence to prove actionable fraud which we will discuss together as issue one. Issue five alleges a denial of a fair trial in withholding ruling on Counts I and II of the Bank's motion for judgment on the evidence until after the trial, and not informing the jury that they could not consider those issues. We will discuss that issue as issue two.

### Issue I: Sufficiency of the Evidence

■ The question presented here is whether the conduct of the Bank amounted to actionable fraud. Perrys, in support of the verdict, first argue that the Bank had an affirmative duty to disclose defects. *Tudor v. Heugel*, (1961) 132 Ind.App. 579, 178 N.E.2d 442, reaffirmed the doctrine of caveat emptor as applied to real estate transactions, and stated that a seller could

not be liable absent false representations or express warranties. *Theis, supra,* relaxed the rule and held that an implied warranty of fitness runs from a builder-vendor of a new house to a purchaser for latent defects not discoverable by reasonable inspection. *Barnes v. MacBrown and Company,* (1976) 264 Ind. 227, 342 N.E.2d 619, extended the doctrine to second purchasers. *Vetor v. Shockley,* (1980) Ind. App. 414 N.E.2d 575 held that there was no implied warranty with respect to a non-builder vendor. Ordinarily a seller is not bound to disclose any material facts unless there exists a relationship for which the law imposes a duty of disclosure. *Fleetwood Corp. v. Mirick,* (1980) Ind.App., 404 N.E.2d 38; 91 C.J.S. *Vendor and Purchaser,* Sec. 57; *Baker v. Meenach,* (1949) 119 Ind.App. 154, 84 N.E.2d 719. It is therefore clear that in this instance mere silence is not actionable fraud.

■ However, if a seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. For, if in addition to his silence, there is any behavior of the seller which points affirmatively to a suppression of the truth or to a withdrawal or distraction of the other parties' attention to the facts, the concealment becomes fraudulent. *Baker, supra;* 91 C.J.S. *Vendor and Purchaser,* Sec. 57. It was stated in *Fleetwood, supra,* quoting from *Rochester Bridge Co. v. McNeil,* (1919) 188 Ind. 432, 122 N.E. 662, 664, that:

> "[w]here a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of a falsehood, even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud."

404 N.E.2d at 44.

The essential elements of the action for fraud were stated in *Coffey v. Wininger,* (1973) 156 Ind.App. 233, 296 N.E.2d 154:

> "The essential elements of fraud are a material representation of past or existing facts, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying. *Middlekamp v. Hanewich* (1970), 147 Ind.App. 561, 263 N.E.2d 189, 23 Ind.Dec. 187. See also: *Gladis v. Melloh* (1971), [149] Ind.App. [466], 273 N.E.2d 767, 27 Ind.Dec. 131 (transfer denied)."

In *Grissom v. Moran,* (1972) 154 Ind. App. 419, 290 N.E.2d 119, the seller of a motel made statements that the facilities of the motel "were all in fine working condition", and of the electrical and sewage systems he said "they were alright". The purchaser made a casual inspection, without the aid of plumbers or electricians, and relied upon the representations of the seller. These representations were knowingly false as the seller had experienced much trouble with the electrical and sewage systems. The court held that this was actionable fraud, and the purchaser was reasonably entitled to rely on the seller's statements:

> "[T]he requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced upon the unwary.

> \*     \*     \*     \*     \*     \*

> A purchaser may rely on statements of fact made by the seller where such elements are not obviously false and where the buyer lacks facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the seller. (Citations omitted.)

290 N.E.2d at 124.

An Illinois case, *Russow v. Bobola,* (1972) 2 Ill.App.3d 837, 277 N.E.2d 769, found liability for non-disclosure by a seller, where the buyer made five visits to the house before purchasing it, and the seller had washed off flood marks in a basement

and painted over them. Silence, the court said, accompanied by deceptive conduct, results in active concealment, and is actionable.

■ In this case, there was evidence that the bank misrepresented the cause of the wet carpet and the detached pillar. Certain misrepresentations occurred in painting over the water marks. Under the above authorities, these acts amount to sufficient misrepresentation which imposed a duty on the Bank and its representative to disclose the whole truth.

Argument is also made by the Bank that the exculpatory language contained in the original contract shields it from liability. However, it cites no authority and we have found no Indiana authority. 37 Am.Jur.2d, *Fraud and Deceit,* Sec. 388 does state:

"It is fairly well established that an affirmative provision of an agreement that property is taken 'as is' or 'with all faults', or, in other words, under the condition in which it is, does not preclude a representee from establishing fraud in respect to false representations made by the representor disposing of such property, in reliance on which representations the transaction is actually consummated. This rule applies to real property sold on an 'as is' basis."

37 Am.Jur.2d, Sec. 388 at p. 525, 526. *See also Wolford v. Freeman,* (1948) 150 Neb. 537, 35 N.W.2d 98; *Massler v. Smit,* (1952) 279 App.Div. 941, 111 N.Y.S.2d 264.

Without commenting on the merits of the case, we find there was sufficient evidence to go to the jury on the question of fraud.

*Issue II: Failure to Rule*

■ As stated, the trial court failed to rule on the Bank's motion for judgment on the evidence as to Count I, negligence, and Count II, warranty, but took the ruling under advisement. Twelve days after the trial was over, the court sustained the motion. The jury had been instructed on negligence, warranty and fraud in the preliminary instructions. However, they were never instructed or told in any fashion that they could not in their deliberation consider negligence and warranty. The Bank assigned this failure to rule and instruct as reversible error. We agree.

Ind.Rules of Procedure, Trial Rule 50(A) provides:

"(a) Where all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court *shall* withdraw such issue from the jury and enter judgment thereon or shall enter judgment thereon, not withstanding a verdict." (Emphasis added.)

Since the motion was made during trial, an oral motion was sufficient. Ind.Rules of Procedure, Trial Rule 7(B). Civil Code Study Commission Comments, 3 W. HARVEY, INDIANA PRACTICE at 367 (1970). Such a motion need not be accompanied by a peremptory instruction. T.R. 50(D). Ind. Rules of Procedure, Trial Rule 51 mandates the trial judge to instruct on the issue for trial.

■ While no cases are cited or found it is obvious that where a single cause of action proceeds upon multiple theories, and the jury has been so instructed in the preliminary instructions but the court determines that some, but not all, of the theories or issues should be withdrawn from the jury, that decision must be made not later than the time instructions are settled and before final arguments are had, instructions are given, and the case is submitted to the jury. That decision must be communicated to the jury. Universally, this is done by an instruction which informs the jury that certain issues are withdrawn from their consideration. Failure to rule and instruct in this manner has the same effect as if the motion were denied. It is logical to assume the jury, having been told in preliminary instructions that certain issues were for trial and not thereafter told to the contrary, will still consider those issues viable. Therefore, if denial of a motion for judgment on the evidence would be reversible error, failure to rule and instruct would be reversible error. As dem-

onstrated in Issue I, warranty is inapplicable to a non-builder vendor, and after six years the statute of limitation of two years had run on the negligence count. The negligence and warranty counts should have been withdrawn and the trial court committed reversible error when it did not rule and instruct. His belated ruling 12 days after the trial ended came too late. It cannot be assumed that the jury did not consider such a potent count as warranty. Nor do we think that the Bank waived this issue. It made its motion, which was in essence never acted upon. We fail to see what more the bank could do.

For the reasons stated above, this cause is reversed and the trial court is ordered to grant a new trial.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.