**Ronald C. FIMBEL and Patricia A. Fimbel, Appellants--Defendants,**

v.

**Thomas L. DeCLARK, Joan C. DeClark and Gena M. Logli, Appellees--Plaintiffs.**

No. 71A03--9707--CV--259.

Court of Appeals of Indiana.

April 28, 1998.

Transfer Denied Sept. 23, 1998.

---

Rochelle S. Meyers, Fred R. Hains, Fred R. Hains & Associates, South Bend, for Appellants–Defendants.

Paul T. Cholis, South Bend, for Appellees–Plaintiffs.

## ·OPINION

STATON, Judge.

Ronald and Patricia Fimbel appeal from a judgment in favor of Thomas and Joan DeClark and Gena Logli ("DeClarks"). The trial court concluded that the DeClarks were entitled to rescission of the contract for the purchase of real estate from the Fimbels, including the return of the contract price and damages associated with the purchase of the real estate. On appeal, the Fimbels contend that the evidence is insufficient to sustain the finding that they fraudulently misrepresented the suitability of the real estate for home construction.

We affirm.

Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the judgment. *Bright v. Kuehl*, 650 N.E.2d 311, 315 (Ind.Ct.App.1995) (citing *Martin v. Roberts*, 464 N.E.2d 896 (Ind.1984)), *reh. denied, trans. denied.*

The facts relevant to this appeal and most favorable to the judgment are that the Fimbels own two contiguous lots on Lake Latonka in Plymouth, Indiana. The lots were purchased with the intention of building a lake cottage on them. However, in 1992 the Fimbels discovered that a home could not be constructed on the lots since the soil was unsuitable for a septic system. Alternative septic arrangements were available at that time for $7,500 to $8,000 plus the cost of additional land.[1] It would cost $1,000 for a study to determine whether an alternate septic arrangement was feasible, but the Fimbels never fully investigated these options.

In April 1994, the Fimbels decided to sell the two lots. The Fimbels set up a meeting with all interested buyers, which included the DeClarks. Mr. DeClark placed a $1,000 deposit on the property after viewing the property for approximately one-half hour. The Fimbels never disclosed the unsuitable condition of the soil for a septic system. One week after closing, the DeClarks discovered the problems detailed above. The trial court found that the Fimbels fraudulently misrepresented the character of the lots by not disclosing the condition of the soil, and granted the DeClarks rescission of the real estate contract and damages. This appeal ensued.

To constitute a valid claim for fraud the party must prove there was a material misrepresentation of past or existing facts made with knowledge or reckless ignorance of its falsity, and the misrepresentation caused reliance to the detriment of the person relying upon it. *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992). Too, "the failure to disclose all material facts by one on whom the law imposes a duty to disclose constitutes actionable fraud." *The First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370, 1372 (Ind.Ct.App. 1998); *Fleetwood Corp. v. Mirich*, 404 N.E.2d 38, 42 (Ind.Ct.App.1980). The Fimbels rely on several different theories in attacking the sufficiency of the evidence.

Initially, the Fimbels contend that they cannot be held liable in fraud for failing to disclose the soil condition of the lots since they were under no duty to do so. "Ordinarily a seller is not bound to disclose any material facts unless there exists a relationship for which the law imposes a duty of disclosure." *Indiana Bank & Trust v. Perry*, 467 N.E.2d 428, 431 (Ind.Ct.App.1984). Courts have found such a relationship, and therefore a duty to disclose, where the buyer makes inquiries about a condition on, the qualities of, or the characteristics of the property. *See id.; Thompson v. Best*, 478 N.E.2d 79 (Ind.Ct.App.1985), *reh. denied, trans. denied.* When a buyer makes such inquiries, it becomes incumbent upon the seller to fully declare any and all problems associated with the subject of the inquiry. *Thompson*, 478 N.E.2d at 84.

In this case, the evidence supports the conclusion that the DeClarks and Fimbels had conversations which imposed a duty upon the Fimbels to disclose the unsuitability of the lots for home construction. Mr. DeClark testified that, while viewing the lots, he asked Mr. Fimbel if he had ever intended to

---

1. In early 1996, the time of this trial, cost estimates were from $8,500 to $12,000.

build a home on them. According to Mr. DeClark, Mr. Fimbel stated that he was going to build, but he ultimately decided that he preferred some property he owned in Minnesota, noting its peacefulness and that he had a friend that lives there. Too, during closing, Mr. DeClark told Mr. Fimbel that he wanted to build a home on the lots. The above inquiry and statement sufficiently introduced the issue of home construction into the parties' transaction such that a duty was imposed on the Fimbels to disclose the information they had regarding the suitability of the lots for residential construction. *See Thompson*, 478 N.E.2d at 81 (duty to disclose water problem when buyer made inquiries regarding sump pump and footing tiles); *Perry*, 467 N.E.2d at 429–30 (duty to disclose structural defects of home and their causes when buyer's agent questioned wet carpet and pillar that was "pulled away" from home). The Fimbels dispute whether these conversations ever took place, but this evidence was before the court and we may not reweigh it and substitute our judgment for that of the trial court. *Bright*, 650 N.E.2d at 315.

The Fimbels also contend that they made no misrepresentation of fact as to whether a home could be constructed on the lots. True, the Fimbels never expressly stated whether or not a home could be constructed on the lots. However, this does not insulate the Fimbels from a judgment in fraud.

[I]f a seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. For, if in addition to his silence, there is any behavior of the seller which points affirmatively to a suppression of the truth or to a withdrawal or distraction of the other parties' attention to the facts, the concealment becomes fraudulent.

*Perry*, 467 N.E.2d at 431. In this case, Mr. Fimbel told Mr. DeClark that the reason he never built on the lots was that he preferred other property. The record is unclear as to whether this was indeed a factor as to the Fimbels' decision not to build on Lake Latonka. Nevertheless, the preference for the other property is, at best, only one reason for not building on Lake Latonka: the other being the inability to place a septic system on the land. "One cannot be allowed, under the law, to *partially* disclose the facts as he knows them to be, yet create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs." *Thompson*, 478 N.E.2d at 84 (emphasis in original). At best, Mr. Fimbel's response was only a partial disclosure of the reasons he did not build at Lake Latonka, and, at worst, the response was a misrepresentation of the true reason a home was never erected on the site.

The statement by Mr. DeClark at closing that he intended to build on the lots appears to have been met with silence. Given the circumstances, this silence can also support a judgment for fraud. "Silence ... accompanied by deceptive conduct, results in active concealment, and is actionable." *Perry*, 467 N.E.2d at 432.

The Fimbels further argue for relief relying on the doctrine of *caveat emptor* and the fact that the purchase agreement contained an exculpatory "AS IS" clause. The Fimbels correctly note that the doctrine of *caveat emptor* has been abolished only as it relates to the purchase of homes or lots from a builder-vendor, which the Fimbels are not. *See Theis v. Heuer*, 264 Ind. 1, 280 N.E.2d 300 (1972); *Vetor v. Shockey*, 414 N.E.2d 575, 577 (Ind.Ct.App.1980) (limiting abolishment of *caveat emptor* to purchase of house from builder-vendor). However, this doctrine will not relieve a party of liability for fraudulent misrepresentations. As for defects known to a seller who is not a builder-vendor at the time of sale, "the tort theories of misrepresentation or fraudulent concealment are alternatives open to the unknowing buyer." *Vetor*, 414 N.E.2d at 577: *See also Grissom v. Moran*, 154 Ind.App. 419, 290 N.E.2d 119, 124 (1972) ("the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced upon the unwary"). Similarly, an "AS IS" clause provides no insulation from fraudulent misrepresentations. *Perry*, 467 N.E.2d at 432.

Finally, we would be remiss in our duties were we not to discuss *The First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370 (Ind. Ct.App.1998): a case addressing the issues presented here but published after the parties filed their briefs. In *Schuyler*, the First Bank of Whiting ("Bank") owned a building which housed a racquetball facility. The building suffered water damage on several occasions. In 1979 or 1980, water came into the lower level of the building, but caused relatively minor damage. The cause of the seepage was remedied. In 1981, the area experienced a heavy rainfall which caused the building's storm/sanitary sewers to back up, damaging twelve of the fifteen racquetball courts. It was then discovered that a check valve, which is designed to prevent drain backups, was never installed in the sewer lines. A check valve was subsequently installed, and the building did not experience further sewer backups. Other than minor seepage and moisture in the building, there were no further serious external water problems.

However, in 1987, the Bank discovered that a water heater was leaking which damaged the racquetball floors and soaked some carpet. Thereafter, Schuyler toured the building for the purpose of purchasing it and using it as office space. When Schuyler inquired as to the cause of the damp carpet and warped racquetball floors, the Bank explained that the damage was the result of the broken water heater. Schuyler made no further inquiries into any water problems in the history of the building. After Schuyler purchased the building, he experienced a number of externally-generated water problems where water flowed, seeped or backed-up into the building. Schuyler sued the Bank claiming it committed fraud when it failed to disclose the history of water problems experienced in the building.

We concluded the Bank did not commit fraud against Schuyler and had no duty to disclose the entire water history of the building. We noted that the Bank answered fully and honestly the question posed to it. The only damage Schuyler questioned was the damage caused by the broken water heater: a fact fully disclosed by the bank. In short,

there was "no evidence to suggest that [the Bank's] explanation of the cause of the visible damage was inaccurate...." *Schuyler*, 692 N.E.2d at 1373.

Unlike *Schuyler*, Mr. Fimbel's explanation as to why he did not build a home on his lots was less than accurate. Mr. Fimbel did not make a full disclosure of the facts known to him which were relevant to Mr. DeClark's inquiry. In *Schuyler*, the bank did fully disclose the cause of the only damage brought to its attention by Mr. Schuyler. Our resolution of this case is consistent with *Schuyler*.

Affirmed.

SHARPNACK, C.J., and HOFFMAN, J., concur.