**AMERICAN UNITED LIFE INSURANCE COMPANY, Appellant–Defendant,**

v.

**Peter DOUGLAS, Matthew Douglas and Sharon K. Phillips, Appellee–Plaintiffs.**

No. 29A02–0304–CV–350.

Court of Appeals of Indiana.

May 18, 2004.

Phillip R. Scaletta, Edward P. Steegmann, Ice Miller, Indianapolis, IN, Attorneys for Appellant.

Jay P. Kennedy, Kroger, Gardis & Regas, LLP, Indianapolis, IN, Sheldon S. Lustigman, Andrew B. Lustigman, The Lustigman Firm, P.C., Michael C. Spencer, Janine L. Pollack, Lee A. Weiss, Brian C. Kerr, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, Ronald A. Uitz, Uitz & Associates, Washington, DC, Attorneys for Appellee.

## OPINION

ROBB, Judge.

American United Life Insurance Company ("AUL") filed a Motion to Dismiss the proposed class action complaint against it. The trial court converted the motion

into a Motion for Summary Judgment, and granted the motion in part and denied it in part.[1] AUL sought certification of the trial court's order for interlocutory appeal, which was granted, and this court accepted jurisdiction. AUL now appeals the unfavorable part of the trial court's order. We affirm.

## Issues [2]

AUL raises several issues for our review, which we restate as follows:

1. Whether the trial court properly denied summary judgment when, as a matter of federal tax law, there is no "redundant" tax deferral as alleged by the plaintiffs' complaint, and the plaintiffs have admitted as much in the trial court proceedings;

2. Whether the trial court properly denied summary judgment on the plaintiffs' claims for fraud, fraudulent concealment, and deceit by determining that, despite not being in a fiduciary relationship with the plaintiffs, AUL could nonetheless owe a duty to disclose to the plaintiffs the nature of the investment;

3. Whether the trial court properly denied summary judgment on the plaintiffs' fraud claims by determining that the alleged misrepresentations or omissions were matters of fact;

4. Whether the trial court properly denied summary judgment to AUL on the plaintiffs' claims for negligence *per se* when the plaintiffs have suffered purely an economic loss;

5. Whether AUL is entitled to summary judgment on the plaintiffs' claims for damages; and

6. Whether AUL is entitled to summary judgment on the plaintiffs' claims for equitable relief.

## Facts and Procedural History

' The plaintiffs were employees of Computer Business Services, Inc. ("CBSI"). In 1994, representatives of CBSI and Edward Miller, who occasionally acted as a broker for AUL annuity and other financial products, met with Michael Schneider, AUL's Manager for Group Sales, about establishing a retirement plan for CBSI employees. CBSI decided to fund a 401(k) plan using an AUL group annuity contract as recommended by AUL. In November 1994, many CBSI employees began directing portions of their salaries to the 401(k) plan.

CBSI's 401(k) plan was terminated in 1997 when the company went bankrupt. AUL distributed the balance of the employees' accounts to them, less an eight percent surrender penalty. The balances were less than employees had anticipated, and in investigating why, they discovered that the 401(k) plan was funded with an insurance product. Peter Douglas, Matthew Douglas, and Sharon Phillips then instituted a proposed class action lawsuit against AUL.

The complaint "challenges the deceptive methods by which [AUL] actively markets and sells a particular product, deferred annuities, for a particular purpose—funding tax-qualified contributory retirement plans." Appellant's Appendix at 33. The complaint is in ten counts; those relevant here are: Count I, alleging fraud, fraudulent concealment, and deceit for "fraudulently induc[ing] purchases of expensive deferred annuities for funding qualified plans based on a tax-deferral benefit to be

---

1. The class certification petition remains pending.

2. We heard oral argument on this case on April 7, 2004, in Indianapolis.

provided by the product when, in fact, any investment funding a qualified plan is tax-deferred," *id.* at 59; Count V, alleging negligence per se for violating state laws and regulatory rules designed to protect consumers from deceptive sales practices;' Count VIII, alleging unjust enrichment and seeking imposition of a constructive trust; Count IX, seeking a declaratory judgment that AUL must cease charging surrender fees and injunctive relief enjoining AUL from charging or collecting those fees with respect to any qualified annuity contract and also enjoining AUL from soliciting or selling qualified annuities using the deceptive sales practices alleged in the complaint; and Count X, seeking reformation of the contract to provide an appropriate investment product.[3]

AUL filed a motion to dismiss the complaint pursuant to Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted for the following reasons: the alleged misrepresentations and omissions by AUL are matters of opinion not fact; the parties' relationship is governed by a written instrument; the plaintiffs failed to allege that their claimed harm proximately resulted from the alleged fraud; the plaintiffs alleged purely economic loss which is not actionable in negligence; the plaintiffs failed to sufficiently plead the predicate criminal acts to support a claim for a civil action by a crime victim; and the plaintiffs have failed to sufficiently plead that their legal remedies are inadequate to support equitable relief. *Id.* at 94–95. AUL filed a supporting brief and affidavits and exhibits. The trial court found that the motion was based upon evidence outside the pleadings, and therefore converted the motion into one for summary judgment. The parties thereafter conducted partial discovery.

Following a hearing, the trial court entered an order, which AUL subsequently asked be reconsidered. The trial court then entered the following "Reconsidered Order on [AUL's] Motion for Summary Judgment":

***14. First Cause of Action: Fraud, Fraudulent Concealment and Deceit.*** This is a case filed in the State of Indiana and subject to Indiana law. The elements of fraud in Indiana are (1) a material representation of a past or existing fact which was untrue; (2) knowledge of falsity or recklessness; (3) reliance; and (4) resulting damages.

*15. Material Representation of a past or existing fact which was untrue.* This element raises several issues of its own in the context of the facts before this court. Those issues may be summarized as follows and are discussed below. (a) Does failure to disclose everything count as a material representation? (b) Was the representation that was made a fact or just an opinion? (c) If it was a fact, was it untrue?

*16. Failure to disclose.* The Plaintiffs allege AUL failed to disclose certain costs associated with the annuities it encouraged them to use as a funding mechanism for their retirement accounts. The failure to disclose all material facts by one on whom the law imposes a duty to disclose also constitutes fraud. Therefore, *only* if AUL had a duty to disclose something it did not disclose, could fraud be a plausible cause of action. The burden to show a duty to disclose is upon the party asserting fraudulent concealment. Therefore, to

---

**3.** The plaintiffs' remaining counts, alleging breach of fiduciary duty and constructive fraud, negligence, negligent misrepresentation, tortious breach of duty to deal with insured in good faith, and a civil action by a crime victim for conversion were either abandoned by the plaintiffs or were disposed of by the grant of summary judgment.

survive AUL's Summary Judgment motion on the fraud allegation, the Plaintiffs must show a factual issue with regard to AUL's duty to disclose and/or its failure to so disclose.

17. *Duty to disclose based on the relationship.* Constructive fraud consists of: 1) a duty existing by virtue of the relationship between the parties; 2) representations or omissions made in violation of that duty; 3) reliance thereon by the complainant; 4) injury to the complainant as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complainant. The Plaintiffs argue constructive fraud, in other words, that AUL, through its representatives, held itself out to be an expert, thereby creating a relationship such that the law imposed upon it a duty to disclose, and that while under that duty, it misrepresented information about which it had superior knowledge.

18. Michael P. Schneider, Regional Sales Director, retirement Services for [AUL] met with the representatives of CBSI in early 1994 with Edward Miller.

19. Andrew Douglass [CBSI representative and later co-trustee of the 401(k) plan] had a prior relationship for financial advice and services with Edward Miller III.

20. Plaintiffs allege that Edward Miller had a preexisting financial advisor relationship with the CBSI principals extending back nearly ten years prior to the annuity sale in question in this lawsuit.

21. The relationship was not that of a financial advisor but of an arm's length sale.

22. However, the AUL representatives had superior knowledge of the retirement plan they were selling and of the funding vehicles available. The duty to disclose on the part of AUL derives, not from the relationship it had with the employer of the Plaintiff, but from state and federal law statutory law [sic] as well as Indiana common law.

23. *Disclosure based on the NASD Conduct Rules.* "The business of insurance, and every person engaged therein, shall be subject to the laws of the several states which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a) (1997). National Association of Securities Dealers ("NASD") Conduct Rules may require disclosure to the investor, in the sales context, of certain elements of a broker's superior knowledge of investments. The Rules may establish relevant standards to assess the "reasonableness or excessiveness of a broker's handling of an investor's account." AUL had a duty to disclose to the Plaintiffs the facts about deductions from their savings and the available funding mechanisms for the plan. This duty arises specifically pursuant to the Indiana Code and Indiana common law as well as from the NASD Conduct rules.

24. *Duty to disclose based on the Indiana Code.* Indiana law precludes the distribution of any statement by an insurance company or an agent of an insurance company misrepresenting the terms or benefits of any policy it issues. IC 27–1–12–25. If AUL made statements representing the benefit of tax deferral associated with the annuities it was selling without indicating that their tax would be deferred regardless of how the retirement plan was funded, then the jury may find that it misrepresented its product. In other words, the jury may find that such statements, if made, promoted the annuities AUL was selling based on their tax deferral benefit when

the annuities actually offered no additional tax deferral benefit.

**25. Duty pursuant to Indiana common law.** The common law standard in the determination of duty in negligence cases involves consideration of (1) the relationship of the parties, (2) the likelihood of harm to the Plaintiff and (3) public policy. *Rice v. Strunk,* 670 N.E.2d 1280, 1284 (Ind.1996). Although AUL was not a fiduciary, its agents were in a position to have superior knowledge with regard to the funding mechanisms to chose for the retirement plan, the fees and charges associated with each funding mechanism, and the advantages and disadvantages of each. Furthermore, AUL designed and drafted the contract presented to the Plaintiffs' employer. Fees and charges deducted from the Plaintiffs' retirement savings certainly reduce those savings and prevent tax free growth with respect to any money removed. The disclosures required under the NASD Conduct Rules may be found by the jury to represent industry standards in place at the time they were issued. The prohibition of misrepresentation under Indiana law is certainly purposed [sic] at least partly on public policy and may be found to be representative of industry standards.

**26. Duty pursuant to the NASD Conduct Rules.** NASD Conduct Rule 2210 specifically requires an insurance company to reveal to those to whom it sells annuities for the funding of a tax deferred retirement plan that the tax deferral benefit is not anything more than they would receive with another funding mechanism in the plan. If found to represent industry standards with respect to disclosure, the jury may find AUL had a duty to disclose that some of the deductions to be made from the Plaintiffs' contributions were associated with the funding mechanism it was promoting for the plan. Furthermore, the jury may find that AUL had a duty to disclose that there were other funding mechanisms available that would not have required such deductions and would have nonetheless resulted in a deferral of tax.

**27. What is the representation alleged to have been made, and is it a fact or an opinion?**

**28. Annuities within a 401(k).** The Plaintiffs allege that AUL represented that the annuities they recommended for funding CBSI's group retirement plan were good funding vehicles for that plan. The Plaintiffs consider this representation to be the "fact" element of their fraud allegation. Plaintiffs allege AUL ascribed value to the annuitization option of the investments within the plan where there was no such value. The representation of a tax deferred annuity as an appropriate funding vehicle inside a tax deferred retirement plan is a statement of fact rather than of an opinion partly because it was or may have been made such that a reasonable recipient of the statement would consider it important in deciding how to invest their retirement savings. The representation of annuities as a good investment vehicle, being a fact representation and thus subject to being true or untrue, is a proper subject for an allegation of fraud. Thus Plaintiff's [sic] claim of fraud on this basis cannot be resolved at the summary judgment stage.

**29.** Plaintiffs also allege AUL failed to disclose material facts about death benefit features and other insurance features in the contract between the parties and that fees charged by AUL under the contract were excessive and unreasonable.

30. The fees and charges about which the Plaintiffs complain are:

1. 1.25% annual maintenance, mortality risk and expense risk charge,

2. 15% annual administrative charge,

3. contract charge of $24 to $40 assessed annually against annuity accounts,

4. AUL adjusting the interest crediting rate on returns under the annuity options at its discretion even though contract owners are locked into the contract for long periods of time; and

5. 8% withdrawal or surrender fee due to CBSI's bankruptcy.

31. There existed a contract between the parties, and the fees and charges about which the Plaintiffs complain were included in that contract and thus disclosed to the Plaintiffs. Therefore, the Plaintiffs' claims of fraud on the bases of fees and charges deducted must fail, and summary judgment should be granted. If Plaintiffs are able to show their agreement to such fees and charges was fraudulently induced for the purpose of collecting those fees and charges, the possibility of establishing damage still remains on the basis of the inability to accumulate retirement funds due to the absence of the money removed for fees and other charges.

\* \* \*

35. *Resulting Damages.* Provided the Plaintiffs can sustain the aforementioned elements for fraud in the minds of a jury, there remains an issue of fact as to what investments Plaintiffs would have chosen had they made a different funding choice and what difference, if any, would exist in their financial position.

\* \* \*

39. **Fifth Cause of Action: Negligence Per Se.** Unlike negligence as alleged in the third cause of action, which is based on the failure of the product to perform as represented, negligence per se is based on an affirmative misrepresentation of the product and may be compensable. Insurance companies are prohibited under Indiana law from misrepresenting their product. Ind.Code § 27–1–12–25 (1993). NASD Conduct Rule 2210 makes certain disclosure requirements with regard to the sales of securities. Whether AUL made any misrepresentations or failed to make certain disclosures with regard to its product thus violating state or federal law is not an issue properly resolved by the court on summary judgment.

\* \* \*

44. **Eighth Cause of Action: Unjust Enrichment and Imposition of Constructive Trust.** A party "seeking a constructive trust must establish the elements of unjust enrichment and also that the benefit to the other party was obtained by means of actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or other unconscionable conduct." *Estate[s] of Kalwitz v. Kalwitz,* 717 N.E.2d 904, 912 (Ind.Ct.App.1999). Whether the actions of AUL rise to the level necessary to establish unjust enrichment is a determination to be made beyond the summary judgment stage of the litigation. If unjust enrichment is determined to have occurred, a constructive trust may be an available equitable remedy.

45. **Ninth Cause of Action: Declarative and Injunctive Relief.** Plaintiffs request the court make certain declarations involving issues which have survived the summary judgment stage of these proceedings. Disposition of this request for declaratory judgment and injunctive relief will require further factual findings.

**46. Tenth Cause of Action: Reformation.** Reformation of the contract is an equitable remedy which may be available in the event Plaintiffs' remaining claims survive this litigation.

IT IS THERFORE ORDERED that Summary Judgment for [AUL] is Granted in Part and Denied in Part as follows with respect to each cause of action alleged in the Amended Complaint.

1. Granted with respect to the following causes of action:

    a. Breach of Fiduciary Duty/Constructive Fraud

    b. Negligence

    c. Negligent Misrepresentation

    d. Tortious Breach of Duty to Deal with Insured in Good Faith

2. Denied with respect to the following causes of action:

    a. Negligence Per Se

    b. Unjust Enrichment and Imposition of Constructive Trust

    c. Declarative and Injunctive Relief

    d. Reformation

3. Fraud, Fraudulent Concealment and Deceit—Denied as to question of appropriateness for annuities as funding vehicle for deferred compensation plans and Granted as to fees and charges in the contract.

4. Civil Action by a Crime Victim—Denied as to Deception and Granted as to Conversion.

Appellant's Appendix at 20–30 (some citations and footnotes omitted) (emphasis in original). AUL sought and was granted permission to pursue this interlocutory appeal. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

When reviewing the grant or denial of summary judgment, the standard of review on appeal is the same as that in the trial court: summary judgment is appropriate only where the evidence shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Embry v. O'Bannon*, 798 N.E.2d 157, 159 (Ind. 2003). Once the moving party has met its initial burden to prove the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate, the party opposing summary judgment must designate specific facts establishing a genuine issue for trial. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 767 (Ind.Ct.App.2003). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Id.*

A party appealing the denial of summary judgment carries the burden of persuading the court on review that the trial court's decision was erroneous. *C.M.L. ex rel. Brabant v. Republic Servs., Inc.*, 800 N.E.2d 200, 202 (Ind.Ct.App.2003). We may consider only those portions of the pleadings, depositions, and other matters specifically designated to the trial court by the parties for purposes of the motion. *Meyer*, 797 N.E.2d at 767. Our standard of review is not changed by the trial court's entry of findings of fact and conclusions thereon; in the summary judgment context, we are not bound by the trial court's findings and conclusions. *Fifth Third Bank v. Comark, Inc.*, 794 N.E.2d 433, 438 (Ind.Ct.App.2003). A trial court's findings and conclusions merely aid our review by providing us with insight into the reasons for the trial court's actions. *Id.*

## II. Basis of Plaintiffs' Claims: Redundant Tax Deferral

AUL contends that the trial court erred in not granting its motion for summary judgment in its entirety because the "conceptual linchpin" of all of the plaintiffs' claims—that the use of the annuity contract to fund the 401(k) plan resulted in a "redundant" tax deferral—is faulty as a matter of law. It also contends that the plaintiffs are judicially estopped from further alleging a redundant tax deferral after admitting at a hearing that there was no such thing.

AUL cites 26 U.S.C. section 72(u):

(1) **In general.**—If any annuity contract is held by a person who is not a natural person—

> (A) such contract shall not be treated as an annuity contract for purposes of this subtitle ..., and

> (B) the income on the contract for any taxable year of the policyholder shall be treated as ordinary income received or accrued by the owner during such taxable year.

\* \* \*

(3) **Exceptions.**—This subsection shall not apply to any annuity contract which—

> \* \* \*

> (B) is held under a plan described in section 401(a) or 403(a), under a program described in section 403(b), or under an individual retirement plan ...

26 U.S.C. § 72(u)(1) and (3). Thus, AUL asserts that the CBSI group annuity contract, held by CBSI as an agent for the plaintiffs, has no tax deferral benefit on its own. *See* 26 U.S.C. § 72(u)(1). Only when it was placed within a qualified plan did the annuity contract receive tax-deferred status. *See* 26 U.S.C. § 72(u)(3). Therefore, the tax deferral is not "redundant," as tax is deferred only once; nor is the tax deferral "unnecessary," as without placing the annuity contract into a qualified plan, there would be no tax deferral at all.

Plaintiffs counter that the gravamen of their complaint is not the actual mechanism of tax deferral but AUL's consumer deception in failing to disclose that the main selling point of an annuity contract—tax deferral—is not necessary in order to produce tax deferred earnings when placing the investment in a qualified plan. Essentially, plaintiffs argue that but for AUL's failure to disclose, they would have chosen a different method of funding their 401(k) plan and still received the benefit of tax deferral.

AUL also contends that the plaintiffs admitted that there was no redundancy and therefore are judicially estopped from continuing to assert their claims based upon this argument. "Judicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted when the court has acted on the admissions of the estopped party." *Ohning v. Driskill,* 739 N.E.2d 161, 163 (Ind.Ct.App.2000), *trans. denied.*

AUL asserts that, in response to AUL's Second Motion to Dismiss, the plaintiffs acknowledged the "general observation that an account can only be tax deferred under the tax code once...." [4] AUL asserts that the plaintiffs also acknowledged that there is but one tax deferral both at the hearing on AUL's Second Motion to Dismiss and at the hearing on AUL's Mo-

---

4. This document does not seem to have been provided by either party in their appendix.

The quote comes from AUL's brief at page 33.

tion for Summary Judgment. *See* Tr. of Second Motion to Dismiss hearing at 80–81 ("[T]he provision in section 72(u) ... makes it impossible for us ... to argue that there is a redundancy between the tax deferral identified with deferred annuities and the tax deferral identified with and provided by retirement plans.... [I]t is true, as a matter of tax law ... [that] any kind of annuities in the 401k plan, they are tax deferred only once...."). *See also* Tr. of Summary Judgment hearing at 168 ("Plaintiffs are not disputing that a group annuity in and of itself does not confer any tax deferral."). AUL therefore contends that the plaintiffs should be judicially estopped from continuing on appeal to assert a tax deferral redundancy. However, the plaintiffs also argued as follows:

> [T]he question Your Honor, is what on earth does [the single tax deferral] have to do with this complaint.... Now is that sales process and decision making process remotely affected by the fact that if the person makes the choice to put a deferred annuity into a 401k plan because that's what the insurance agent advises them to do, then it turns out under section 72(u)3(b) [sic] or what ever it is that only one layer of tax deferral actually under the code gets applied to that product. The answer is Your Honor, that doesn't make any difference what so ever in the context of the claims we are talking about. The prospective purchaser making the decision here has to choose if that person is informed enough to know that there is a choice in this area and informed enough to make a reasonable decision, has to choose between something that has tax deferral benefits attached to it in common parlance because that's what deferred annuities are sold for, tax deferral. And, and as a consequence of that, they cost a lot more than a mutual fund that will enjoy if it is purchased for the

retirement plan, same tax treatment and it won't cost as much.... So, the redundancy argument, you know, maybe that's a term that is, is not as clear as it should be in this context.... [T]he fact that the code eventually provides us only one tax deferral provision is not relevant to the argument.... [I]n any event you need full disclosure about what [the] attributes of that product are.

Tr. of Second Motion to Dismiss Hearing at 81, 84–86, 88.

We agree with both parties that there is no actual "redundant"—as in, duplicate—tax deferral, and to that extent, the plaintiffs' complaint is perhaps inartfully drafted. However, we also agree with the plaintiffs that the basis of their complaint is clear and unequivocal: the qualified retirement plan itself provides tax deferral benefits and it was not necessary to purchase a deferred annuity to achieve that result, but the plaintiffs were not made aware of that fact through their dealings with AUL. The "admission" that there is but one tax deferral in this scenario does not affect the substance of the plaintiffs' complaint and AUL is not entitled to summary judgment on this basis.

### III.  Count I: Fraud, Fraudulent Concealment and Deceit

AUL contends that the trial court erred in denying its motion for summary judgment as to the plaintiffs' first cause of action for fraud, fraudulent concealment, and deceit upon finding that, although no fiduciary relationship existed between the parties, AUL nonetheless owed a duty to disclose to the plaintiffs the nature of the investment. AUL also contends that the trial court erred in denying summary judgment as to these claims because the alleged misrepresentations or omissions were opinions, not matters of fact.

## A. Elements of Fraud

■ To constitute a valid claim for fraud, the complaining party must prove there was a material misrepresentation of past or existing fact made with knowledge or reckless ignorance of its falsity, and the misrepresentation caused reliance to the detriment of the person relying upon it. *Fimbel v. DeClark*, 695 N.E.2d 125, 127 (Ind.Ct.App.1998), *trans. denied.* "The failure to disclose all material facts by one on whom the law imposes a duty to disclose constitutes actionable fraud." *Id.* (quoting *The First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370, 1372 (Ind.Ct. App.1998)).

## B. Duty to Disclose

Because we are faced with an alleged failure to disclose all material facts, the threshold question is whether AUL had a duty to disclose.[5] AUL contends that the only way a duty could be imposed upon it is if there was a fiduciary relationship between the parties, and because the trial court specifically found there was no fiduciary relationship, summary judgment should have been granted in its favor. The trial court found that although there was no fiduciary relationship, AUL nonetheless owed a duty to the plaintiffs based upon Indiana common law and state and federal statutory law. We believe the question can be settled through reference to Indiana common law.

■ A duty to disclose may arise by virtue of a fiduciary relationship. *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind.Ct.App.1998), *trans. denied.* We agree with the trial court and with AUL that no fiduciary relationship existed here. A fiduciary relationship may not be premised on an arms length transaction result-

ing in the formation of a contract. *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind.Ct. App.1994), *trans. denied.* There is no evidence that the parties herein were involved in anything other than an arms length transaction resulting in the formation of the annuity contract. However, the existence of a fiduciary relationship is not the only basis for a claim of fraud. *Wells*, 691 N.E.2d at 1251.

In *Mullen*, we noted that a duty may arise where the relationship between the parties is that of buyer and seller because the "law recognizes that in a buyer-seller relationship one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. The relationship is therefore one which invokes a duty of good faith and fair dealing." 643 N.E.2d at 401. In *Wells*, we held that the relationship between a bank and a checking account holder invokes a duty of good faith and fair dealing "to at least the same extent as does a buyer-seller relationship." 691 N.E.2d at 1251.

The facts of *Scott v. Bodor, Inc.*, 571 N.E.2d 313 (Ind.Ct.App.1991), are somewhat similar to those presented here. In that case, Scott offered his services as a financial planner to Boder, Inc., a closely-held corporation. Over the course of several years, he set up various insurance and investment plans for the company, provided tax planning advice to the company and to one of the shareholders personally, and eventually became the company's general financial advisor. At some point, the company's officers and Scott met to discuss the company's tax situation. Scott suggested a supplemental income plan and recommended that they meet with Thomas Brown, an expert in such plans. The officers agreed, and Brown flew to Indiana to

---

5. Counsel for AUL acknowledged at the oral argument that if AUL owed a duty to CBSI, it also owed a duty to the individual plaintiffs as third party beneficiaries of the contract.

meet with them. Scott introduced Brown as his associate and Brown presented the plan as having two extremely important features: an immediate tax deduction for any funds contributed and the ability to retrieve any funds paid in if necessary. Brown described the plan as an investment vehicle with a small life insurance component, and Scott assured the officers that it was an investment plan when they told him that they did not want the program if it was only a life insurance policy. Neither Scott nor Brown mentioned that the program was exclusively a whole life insurance policy, and the written materials did not mention that the plan was to be funded exclusively through life insurance. The company implemented the plan and contributed to it for two years, taking a corresponding tax deduction each year. In the third year, the officers discovered that the contributions were not tax deductible and demanded that their funds be immediately withdrawn from the plan. Only $117,000 of the $370,000 contributed was recovered. The company terminated all business dealings with Scott and Brown and filed a complaint against both men alleging actual and constructive fraud and professional negligence. Scott and Brown filed a motion for summary judgment, which motion was denied.

On appeal, this court was presented with the question of whether a duty can exist absent a confidential or fiduciary relationship. We noted that a constructive fraud may be found where one party takes advantage of his dominant position in a fiduciary relationship, but that this is not the exclusive basis for the theory of constructive fraud. *Id.* at 324. A constructive fraud may also arise where 1) a seller makes unqualified statements to induce another to make a purchase; 2) the buyer relies upon the statements; and 3) the seller has professed to the buyer that he has knowledge of the truth of the state-

ments. *Id.* We held that there was evidence tending to show that Scott and Brown claimed special knowledge as to matters of tax planning; that Brown claimed to be a specialist in the type of plan the company was induced to enter; that Scott and Brown made affirmative, unqualified statements about the tax deferred nature of contributions, the ability to have the contributions refunded, and the nature of the underlying investments; and that the company relied upon Scott and Brown's self-professed "special knowledge." *Id.* Thus, there was sufficient evidence to raise a genuine issue of material fact as to the existence of a duty, and we affirmed the trial court's denial of the motion for summary judgment. *Id.* at 325.

■ In this case, AUL presented a "Group Retirement Plan Proposed Especially For [CBSI]." The first page of the proposal contains the following heading: "AUL—Retirement Savings Plan Specialists." Appellee's Appendix at 48. The proposal states that "AUL will add value to your retirement savings plan by—Tailoring your retirement savings plan to your needs...." *Id.* at 49. The proposal notes that "AUL offers a comprehensive range of retirement savings plan services so that you will not have to be a retirement plan expert.... AUL pension consultants meet with prospective plan sponsors to tailor a retirement plan to meet each company's needs and philosophy." *Id.* at 54. Consultants assess "types of contributions that can be used to best achieve the desired plan results." *Id.* AUL held itself out as a "specialist" in retirement savings plans and promised to tailor the plan to the individual needs of the investor by assessing the appropriate types of contributions. We do not have here the kind of affirmative statements made in *Scott,* but this case is based primarily on omissions made by AUL. CBSI

representatives have alleged that they relied on AUL's self-proclaimed expertise in choosing a retirement plan and believed that AUL's recommendation was "categorically appropriate for 401(k) plan investing." Affidavit of Andrew Douglass, Appellee's Appendix at 43. If they had known the true nature of the investment, CBSI representatives would not have funded the plan with a deferred annuity product. *Id.* at 44. AUL has the kind of superior knowledge of the subject which invokes a duty of good faith and fair dealing with the purchaser of its products, including the duty to disclose the nature of the investment especially when it knew that it was selling a product for placement in a 401(k) plan. AUL's argument that it owed no duty to the plaintiffs must therefore fail.

Because we have decided the issue of duty with reference to the Indiana common law, we need not address the trial court's reliance on state and federal statutory law or regulatory standards. The trial court did not err in denying AUL's motion for summary judgment on the basis of duty.

C. Representations of Opinion, not Fact

■ AUL also contends that the trial court erred in denying summary judgment on the plaintiffs' fraud, fraudulent concealment, and deceit claim because the alleged misrepresentations or omissions are matters of opinion, not fact, and are thus not actionable in fraud.

■ AUL contends that the plaintiffs are alleging misrepresentations or omissions regarding the "appropriateness," "value," or "main benefit" of the annuities, which are matters of opinion or legal conclusion, not fact. Fraud requires a misrepresentation of a material fact; expressions of opinion cannot be the basis for an action in fraud. *Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind.Ct.App.2002). In *Kreighbaum*, the court held that an appraisal is a matter of opinion. *Id.* In *Hardy v. South Bend Sash & Door Co., Inc.*, 603 N.E.2d 895 (Ind.Ct. App.1992), *trans. denied*, we held that a recommendation to increase the purchase price of a closely-held corporation's stock to a certain amount was a representation of value which was not actionable in fraud because it was a mere expression of opinion involving a matter of judgment and estimation about which reasonable men could differ. *Id.* at 902.

■ The plaintiffs state that the crux of their complaint is not the appropriateness of the annuity to fund the retirement plan, the value of the annuities, or the performance of the investment, but that AUL misrepresented or omitted the objective and material fact that any investment in a qualified plan is tax deferred and the independent tax deferral property of the annuity was unnecessary. We agree that this is the point of the plaintiffs' complaint and that any concept of the "value" or "main benefit" of the investment is incidental to the larger question.[6] However, the tax deferral properties of the annuity are a matter of law, and in general, a misstatement of law cannot form the basis of fraud because everyone is presumed to know the law and therefore, the allegedly defrauded party cannot justifiably have relied on the misstatements. *Scott*, 571

---

6. To the extent the trial court stated in finding 28 of its "Reconsidered Order" that a representation to the effect that the annuities were *"good* funding vehicles" or were a *"good* investment vehicle" was a representation of fact, the court was in error. Appellant's Appendix at 24–25 (emphasis added). Whether a particular funding vehicle is "good" or not is a matter of opinion. It depends upon matters of comparison with other available alternatives and in this sense is more analogous to a representation of "value" or "main benefit."

N.E.2d at 319. There is an exception to that general rule for misstatements of law made by an attorney or someone professing knowledge in legal matters. *Id.* In *Scott,* we held that the exception is not limited to attorneys, but applies whenever a party claims a special knowledge or expertise in the law. *Id.* at 320. Thus, Scott, who claimed an expertise in tax planning, and Brown, who claimed an expertise in the plan the company entered into, could be charged with making actionable misrepresentations regarding the nature of the plan and the tax deductible status of the contributions. *Id.*

In this case, AUL has proclaimed an expertise in retirement savings plans, as demonstrated by the statements described in the section above which were made in the proposal provided to CBSI. Thus, the misrepresentations or omissions which AUL made regarding the tax deferred nature of the plaintiffs' plan may be actionable in fraud and the trial court did not err in denying AUL's motion for summary judgment on this basis.

#### IV. Count V: Negligence *per se*

■ AUL also contends that the trial court erred in denying summary judgment on the plaintiffs' claim for negligence *per se* because they have alleged purely economic loss, and notes that the trial court granted summary judgment as to plaintiffs' negligence and negligent misrepresentation [7] claims on this same basis.

■ The unexcused or unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence *per se* if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *Town*

*of Montezuma v. Downs,* 685 N.E.2d 108, 112 (Ind.Ct.App.1997), *trans. denied.* In order for the violation of a statute or ordinance to be negligence *per se,* the trier of fact must first determine whether the statute is applicable. *Dawson by Dawson v. Long,* 546 N.E.2d 1265, 1268 (Ind.Ct.App. 1989), *trans. denied.* The trier of fact must also determine whether a violation of the statute occurred and, if so, whether the violation proximately caused the injury. *Id.* Negligence *per se* supplies liability, but the plaintiff must still prove causation and damages just as in any other negligence claim. *See City of Gary v. Smith & Wesson, Corp.,* 801 N.E.2d 1222, 1245 (Ind. 2003).

■ The economic loss rule applies to bar recovery "where a negligence claim is based upon a product's failure to perform as expected and the plaintiff suffers only economic damages." *Martin Rispens & Son v. Hall Farms,* 621 N.E.2d 1078, 1089 (Ind.1993). If no physical harm occurs such that a loss is only pecuniary, courts deny recovery under a negligence theory. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 938 (Ind.Ct.App.1996).

AUL contends that there is no reason why the economic loss doctrine should not apply to a negligence *per se* action just as it does to every other negligence action, because negligence *per se* is merely negligence at law as opposed to negligence in fact. AUL further contends that the only damage alleged by the plaintiffs is economic loss. The plaintiffs counter that Indiana case law has already decided that the economic loss doctrine applies only to products liability cases in which the allegation is that the product failed to perform as expected, and the trial court specifically

---

7. It actually appears that the plaintiffs withdrew the negligent misrepresentation claim and no substantive ruling was made by the trial court as to this claim.

acknowledged that failure to perform was not the basis of the plaintiffs' complaint for negligence *per se*. In *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572 (Ind.Ct.App. 1993), this court held that the economic loss doctrine applies to a negligence action for economic loss *to a product* caused by a defect in the product, and refrained from expanding the rule to preclude the recovery of economic loss in other actions for negligence. *Id.* at 575 (emphasis added). In *Runde*, we allowed purchasers of a house to seek from a real estate broker and house inspector recovery of damages for uncorrected defects in the house on a theory of negligence. Here, the plaintiffs seek recovery of their losses due to the alleged misrepresentations or omissions by AUL.

We agree with the plaintiffs that the economic loss doctrine is not applicable to this case. This is not a case seeking recovery for losses caused to the product by the product. As the trial court found, it is not a "failure to perform" case. Rather, it seeks recovery in negligence based upon AUL's violation of state statutory and federal regulatory law in selling the product. Thus, the trial court did not err in denying AUL's motion for summary judgment as to the plaintiffs' count for negligence *per se*.

## V. Claim for Damages

AUL next contends that because the trial court granted summary judgment in AUL's favor as to the plaintiffs' claims that AUL failed to disclose the allegedly hidden fees and costs associated with the annuity contract, the plaintiffs have no remaining claim for damages. The plaintiffs counter that the trial court determined the substantive issue that AUL did not fail to disclose the fees and costs, which is a separate issue from whether those fees and costs can be considered in determining the measure of damages if the plaintiffs prove their claims that had AUL fully disclosed the nature of their investment, they would have chosen another investment vehicle and avoided those fees and costs altogether.

We agree with the plaintiffs. That AUL did not fail to disclose the fees and costs and thus cannot be liable for failure to so disclose as a separate cause of action does not automatically mean that the plaintiffs cannot recover such fees and costs if they prove the remainder of their substantive claims. Moreover, the fees and costs may not be the only damages the plaintiffs have incurred.

## VI. Claim for Equitable Relief

Finally, AUL contends that the trial court should have granted summary judgment as to each of the plaintiffs' equitable claims. The plaintiffs sought imposition of a constructive trust due to unjust enrichment, injunctive relief, and reformation of the contract. AUL premises its argument on the assumption that the allegations of fraud are erroneous. As we have agreed with the trial court that the fraud claims may stand, we disagree that summary judgment should have been granted as to the equitable claims.

## Conclusion

The trial court did not err in denying AUL's motion for summary judgment as to the plaintiffs' claims for fraud, fraudulent concealment, and deceit, negligence *per se*, and the claims for monetary damages and equitable relief. We therefore affirm the judgment of the trial court and remand for further proceedings.

Affirmed.

SULLIVAN, J., and CRONE, J., concur.